FILED

2016 Jun-24  PM 02:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATE DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **TENNESSEE RIVERKEEPER, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. _____** |
| | ) | |
| **3M COMPANY; BFI WASTE SYSTEMS** | ) | |
| **OF ALABAMA, LLC; CITY OF DECATUR,** | ) | |
| **ALABAMA; MUNICIPAL UTILITIES** | ) | |
| **BOARD OF DECATUR, MORGAN** | ) | |
| **COUNTY, ALABAMA; and JOHN DOES 1-10,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### NATURE OF THE CASE

1.    This is a citizen's suit for declaratory and injunctive relief brought pursuant to the provisions of Section 7002(a)(1)(B) of the federal Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B), to abate the imminent and substantial endangerment to health and the environment caused by Defendants' disposal of hazardous and solid waste containing perfluorooctanoic acid ("PFOA"), perfluorooctane sulfonate ("PFOS"), and related chemicals at several locations in and around Decatur, Alabama, resulting in the contamination of groundwater, sediments, private water supplies, the Tennessee River and its tributaries, fish, and public drinking water supplies that utilize water from the Tennessee River.  Despite knowledge of the significant hazards posed by these chemicals, Defendants have failed to take the steps necessary to protect health and the environment from this contamination. Due to Defendants' violations of RCRA as alleged in this Complaint, Plaintiff seeks a declaratory judgment, injunctive relief, and the award of attorney's fees and costs of litigation.

2.      For decades, Defendant 3M Company made and/or used PFOA and PFOS – chemicals involved in the manufacture of flagship 3M "non-stick" brands like Stainmaster and Scotchgard – at the company's Decatur, Alabama facility, one of its largest plants. However, these popular – and profitable – products double as toxic threats: Research strongly indicates PFOA and PFOS are potent carcinogens, and the chemicals have been linked to a host of other serious health issues. Even worse, the very properties that make these products popular also make them a persistent environmental problem: In essence, these "non-stick" chemicals do not stick to anything in the environment either, meaning they do not bind to anything to break down into safer components. There is thus nearly *no safe level* of these chemicals in the environment.

3.      Yet, for decades, 3M Company and its co-Defendants discharged countless tons of these toxins into the environment – and, more specifically, into the Tennessee River. Perhaps worse, the Defendants have done little to clean up the contamination they have created.

4.      As such, and without question, these chemicals pose significant threats to the Tennessee River, her various environmental habitats, the wildlife that calls her home, and the people who come in contact with her waters.

5.      Consequently, where its members serve as both users and guardians of the Tennessee River, the Tennessee Riverkeeper now implores this court to help it do what the Defendants, the State of Alabama and the United States Environmental Protection Agency should have done over the past several decades – compel the clean up of the contamination the Defendants have caused and abate the substantial threat these pollutants pose to the Tennessee River.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over the RCRA claims set forth in this Complaint pursuant to Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), and the federal question

statute, 28 U.S.C. § 1331.  This Court also has jurisdiction to award Plaintiff all necessary injunctive relief, pursuant to Section 7002(a) of RCRA, 42 U.S.C. § 6972(a).

7.      Plaintiff has complied with the pre-suit notice provisions of RCRA. Pursuant to Section 7002(b)(2)(A) of RCRA, 42 U.S.C. § 6972(b)(2)(A), on September 18, 2015, Plaintiff mailed a Notice of Intent to file suit under RCRA for abatement of the imminent and substantial endangerment to health and the environment discussed herein to Defendants, the Administrator of the U.S. Environmental Protection Agency ("EPA"), the Regional Administrator of the EPA, and the Chief of the Land Division of the Alabama Department of Environmental Management ("ADEM") (the "September Notice," attached hereto as Exhibit A and incorporated by reference herein).

8.      More than 90 days have passed since the September Notice was served on Defendants and these agencies, and the violations complained of in the September Notice are ongoing or likely to recur, and the violations remain a present threat to human health and the environment, as of the date this Complaint is being filed.

9.      EPA has not commenced, nor is it diligently prosecuting, an action under RCRA § 7003, 42 U.S.C. § 6973, to address the violations by Defendants of RCRA complained of herein.

10.     EPA has not commenced, and is not diligently prosecuting, an action under Section 106 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9606, to address the violations by Defendants of RCRA complained of herein.

11.     Neither EPA nor the State of Alabama is actually engaging, nor have they actually engaged, in a removal action under Section 104 of CERCLA, 42 U.S.C. § 9604, to address the violations by Defendants of RCRA complained of herein.

12.    Neither EPA nor the State of Alabama is diligently proceeding with a remedial action under CERCLA, 42 U.S.C. § 9601 *et. seq.,* to address the violations by Defendants of RCRA complained of herein.

13.    EPA has not obtained a court order, nor has it issued an administrative order, under RCRA Section 7003, 42 U.S.C. § 6973, or Section 106 of CERCLA, 42 U.S.C. § 9606, pursuant to which any Defendant or any other responsible party is diligently conducting a removal action, Remedial Investigation and Feasibility Study, or any remedial action that addresses the violations by Defendants of RCRA complained of herein.

14.    The State of Alabama has not commenced, nor is it diligently prosecuting, an action under RCRA Section 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), to address the violations by Defendants of RCRA complained of herein.

15.    The State of Alabama has not incurred costs to initiate a Remedial Investigation and Feasibility Study under CERCLA Section 104, 42 U.S.C. § 9604, to address the violations by Defendants of RCRA complained of herein.

16.    Venue is appropriate in the Northern District of Alabama, pursuant to Section 7002(a) of RCRA, 42 U.S.C. § 6972(a), because the violations complained of herein have and continue to occur within this judicial district.

17.    Pursuant to 42 U.S.C. § 6972(b)(2)(F), upon receipt of a file stamped copy of this Complaint, Plaintiff will serve a copy of this Complaint on the Administrator of the Environmental Protection Agency and the Attorney General of the United States.

## PARTIES

18.    Plaintiff, Tennessee Riverkeeper, Inc. ("Riverkeeper") is a non-profit membership corporation, with over 1,800 members, dedicated to the preservation, protection, and defense of the Tennessee River and its tributaries. Riverkeeper actively supports effective enforcement and

implementation of federal environmental laws, including RCRA, the CWA and the Alabama Water Pollution Control Act ("AWPCA"), on behalf of and for the benefit of its members.

19.     Members of Riverkeeper have recreated in, on or near, or otherwise used and enjoyed, or attempted to use and enjoy, the Tennessee River, including the Wheeler Reservoir, and its tributaries, in the past, and they intend to do so in the future.  They have a direct and beneficial interest in the continued protection, preservation, and enhancement of the environmental, aesthetic, and recreational values in these waters, and the quality of these waters directly affects the recreational, aesthetic and environmental interests of members of Riverkeeper. The recreational, aesthetic, and environmental interests of Riverkeeper's members have been, are being, and will be adversely affected by the Defendants' continued violations of RCRA as alleged in this complaint.

20.     Members of Riverkeeper now recreate less on the Tennessee River, including the Wheeler Reservoir, because of the Defendants' violations of RCRA. The violations alleged herein have had a detrimental impact on those members' interests because the violations have adversely affected and/or diminished aquatic life and water quality in the Tennessee River, and have made the Tennessee River less suitable for fishing, boating, swimming, skiing, wading, walking, observing nature, and/or relaxing. Said members would recreate more in and around the Tennessee River but for Defendant's violations of RCRA, and the imminent and substantial endangerment to health and the environment Defendants have thereby created.  Riverkeeper members will recreate more often in or near the Tennessee River once Defendants' violations of RCRA have been abated.

21.     Riverkeeper members enjoy fishing, boating, swimming, skiing, wading, walking, observing nature, or relaxing at Wheeler Reservoir. Riverkeeper members are thus concerned that the contamination Defendants have caused and created poses a risk to their health and safety. For example, Riverkeeper members who fish at and/or near the Wheeler Reservoir are concerned that

fish caught from these waters may not be safe to eat. Members are also concerned about the safety of drinking water, which may contain these contaminants. Moreover, they are concerned about absorption of these chemicals through their skin if their bodies are exposed to waters containing these chemicals.

22.    The relief sought in this case would provide redress for these injuries. Additionally, because these injuries are being caused by pollution of waters of the United States and/or the improper handling, storage, treatment, transportation, or disposal of hazardous waste, the injuries fall within the zone of interests protected by the RCRA.

23.    Defendant 3M Company ("3M") is a foreign corporation authorized to do business in the State of Alabama, and doing business in Decatur, Morgan County, Alabama, at all times relevant hereto.  Defendant 3M owns and operates manufacturing and disposal facilities located at 1400 State Docks Road in Decatur, Alabama ("3M Decatur facility"). Defendant 3M also owns the Bert Jeffries Landfill. Defendant 3M is a "person" within the meaning of Section 1004(15) of RCRA, 42 U.S.C. § 6903(15).

24.     Defendant BFI Waste Systems of Alabama, LLC ("BFI") is a foreign limited liability corporation authorized to do business in the State of Alabama, and doing business in Hillsboro, Lawrence County, Alabama, at all times relevant hereto.  Defendant BFI owns and operates the BFI Morris Farms Landfill located on County Road 418 in Hillsboro, Alabama ("Morris Farms Landfill").  Defendant BFI is a "person" within the meaning of Section 1004(15) of RCRA, 42 U.S.C. § 6903(15).

25.    Defendant City of Decatur, Alabama ("Decatur") is an incorporated municipality located in Morgan County, Alabama.  Defendant Decatur owns and operates the City of Decatur – Morgan County Sanitary Landfill ("Morgan County Landfill") located on Landfill Drive in Trinity, Morgan

County, Alabama.  Defendant Decatur is a "person" within the meaning of Section 1004(15) of RCRA, 42 U.S.C. § 6903(15).

26.     Defendant Municipal Utilities Board of Decatur, Morgan County, Alabama, ("Decatur Utilities") is a municipal utility service owned and operated by Defendant Decatur. Defendant Decatur Utilities owns and operates the Dry Creek Waste Water Treatment Plant ("WWTP") located at 902 Wilson Street NW in Decatur, Alabama.  Defendant Decatur Utilities is a "person" within the meaning of Section 1004(15) of RCRA, 42 U.S.C. § 6903(15).

27.     Plaintiff is presently unaware of the true names or capacities, including whether they are individuals or business entities, of Defendant Does 1 through 10, and therefore sues them under such fictitious names, and will seek leave of this court to insert true names and capacities once they are ascertained.

## STATUTORY BACKGROUND

28.     RCRA is a comprehensive environmental statute that was enacted with the primary purpose of reducing generation of hazardous waste, and, moreover, to ensure the proper treatment, storage, and disposal of waste that is generated, so as to minimize its present and future threats to human health and the environment.  42 U.S.C. § 6902(b).

29.     Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), authorizes private citizens to commence civil actions:

> against any person … including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

30.     Section 7002(a) of RCRA, 42 U.S.C. § 6972(a)(1)(B), empowers this Court to restrain any person who has contributed or who is contributing to the past or present handling, storage,

treatment, transportation, or disposal of any solid or hazardous waste, and to order such person to take such other action as may be necessary.

31.     Section 1004(3) of RCRA, 42 U.S.C. § 6903(3), defines "disposal" as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such … waste or any constituent thereof may enter the environment … or discharged into any waters, including ground waters."

## FACTUAL ALLEGATIONS

### Defendants' Generation, Handling, Storage, Treatment, Transportation and/or Disposal of PFOA and PFOS Contaminated Waste

32.     Defendant 3M owns and operates the 3M Decatur facility, consisting of manufacturing and disposal facilities, located at 1400 State Docks Road in Decatur, Alabama, along the banks of the Tennessee River. Defendant 3M's Decatur facility has released and continues to release PFOA, PFOS, and related chemicals into groundwater and surface water, through which these chemicals have been and continue to be discharged into the Tennessee River (Wheeler Reservoir) and its tributaries.

33.     Defendant 3M manufactured and/or used PFOA, PFOS, and related chemicals at its Decatur facility and disposed of hazardous and solid waste containing these chemicals in and on its property and on adjacent property, from which properties these chemicals have migrated and continue to migrate into the Tennessee River (Wheeler Reservoir) and its tributaries.

34.     Defendant 3M has discharged and continues to discharge wastewater containing PFOA, PFOS, and related chemicals from its on-site wastewater treatment plant into Bakers Creek, a tributary to the Tennessee River. 3M disposed of sludge from its on-site wastewater treatment plant by means of subsurface injection in a 575-acre area designated as the "sludge incorporation area."  In addition, 3M also has discharged and continues to discharge wastewater containing

PFOA, PFOS, and related chemicals to Defendant Decatur Utilities' Dry Creek WWTP, which discharges wastewater containing these chemicals into the Tennessee River.

35.    Defendant BFI owns and operates the Morris Farms Landfill which, for many years, accepted sludge contaminated with PFOA, PFOS and related chemicals from 3M's Decatur facility.  As a result, PFOA, PFOS and related chemicals are present in the Morris Farms Landfill, resulting in groundwater contamination and the generation of contaminated leachate. This leachate is sent to Dry Creek WWTP, owned and operated by Defendant Decatur Utilities, which discharges wastewater containing PFOA, PFOS and related chemicals to the Tennessee River.

36.    Defendant City of Decatur owns and operates the Morgan County Landfill which, for many years, accepted the majority of industrial waste from Defendant 3M's Decatur facility as well as Defendant 3M's onsite WWTP sludge.  As a result, PFOA, PFOS and related chemicals are present in the Morgan County Landfill, resulting in groundwater contamination and the generation of contaminated leachate.  This leachate is sent to the Dry Creek WWTP, which is owned and operated by Defendant Decatur Utilities, and which discharges wastewater containing PFOA, PFOS and related chemicals to the Tennessee River.

37.    Defendant 3M owns the Bert Jeffries Landfill, which, for many years, accepted industrial waste and sludge contaminated with PFOA, PFOS and related chemicals from 3M's Decatur facility.  As a result, PFOA, PFOS and related chemicals are present in the Bert Jeffries Landfill, resulting in groundwater and surface water contamination.

38.    Defendant Decatur Utilities owns and operates the Dry Creek WWTP, which has received wastewater containing PFOA, PFOS and related chemicals from 3M and other industrial facilities over the course of many years. The Dry Creek WWTP continues to receive wastewater from 3M's Decatur facility, as well as landfill leachate from the Morris Farms and Morgan County Landfills,

where both this wastewater and leachate is contaminated with PFOA, PFOS and related chemicals. The Dry Creek WWTP does not remove these hazardous chemicals from the waste stream and, as a result, discharges these hazardous chemicals into the Tennessee River. The Dry Creek WWTP also disposes of its sludge that is contaminated with these hazardous chemicals into the Morgan County Landfill.  For many years, sludge (biosolids) from the Dry Creek WWTP that contained PFOA, PFOS and related chemicals was applied as a soil amendment on fields in Lawrence, Morgan and Limestone Counties in Alabama, and these chemicals have contaminated the soil, surface water and groundwater at and near those fields.

### Hazards of PFOA, PFOS, and Related Chemicals

39.    The stable carbon-fluorine bonds that make PFOA and PFOS such pervasive industrial and consumer products also result in their persistence. There is no known environmental breakdown mechanism for these chemicals. They are readily absorbed into biota and have a tendency to accumulate with repeated exposure. PFOS crosses the placenta in humans, accumulates in amniotic fluid, and has been detected in the umbilical cord blood of babies.

40.    When humans are exposed to PFOA and PFOS, these toxic chemicals bind to plasma proteins in the blood and are readily absorbed and distributed throughout the body.  The liver and kidneys are important binding and processing sites for PFOA and PFOS, resulting in physiologic changes to these and other organs.  Because of strong carbon-fluorine bonds, PFOA and PFOS are stable to metabolic degradation, resistant to biotransformation, and have long half-lives in the body.  These toxic chemicals accumulate in the body over time, and cause long-term physiologic alterations and damage to the blood, liver, kidneys, immune system and other organs.

41.    The human diseases caused by exposure to PFOA, PFOS and related chemicals include cancer, immunotoxicity, thyroid disease, ulcerative colitis and high cholesterol. The association

between exposure to these chemicals and certain cancers has been reported by the C8 Health Project, an independent science panel charged with reviewing the evidence linking PFOA, PFOS and related chemicals to diseases based on health research carried out by the Science Panel in the Mid-Ohio Valley population exposed to PFOA, PFOS and related chemicals as a result of releases from an E. I. du Pont de Nemours and Company chemical plant. The C-8 Science Panel identified kidney cancer and testicular cancer as having a "probable link" to PFOA exposure in the Mid-Ohio Valley population exposed to PFOA in drinking water. Epidemiological studies of workers exposed to PFOA on the job support the association between PFOA exposure and both kidney and testicular cancer and also suggest associations with prostate and ovarian cancer and non-Hodgkin's lymphoma.  Rodent studies also support the link with cancer.  The majority of a United States Environmental Protection Agency ("EPA") Science Advisory Board expert committee recommended in 2006 that PFOA be considered "likely to be carcinogenic to humans."

42.    Additionally, the C8 Science Panel has found a probable link between exposure to PFOA, PFOS, and related compounds, and the following human diseases: pregnancy-induced hypertension, ulcerative colitis, and high cholesterol. Furthermore, in recent years, immunotoxicity of PFOA, PFOS and related compounds, has been demonstrated in a wide variety of species and models, including humans. For instance, a study of ninety-nine Norwegian children at age three found that maternal serum PFOA concentrations were associated with decreased vaccine responses, especially toward rubella vaccine, and increased frequencies of common cold and gastroenteritis. The combined human and experimental evidence is in strong support of adverse effects on immune functions at relatively low exposure levels.

43.    In May 2016, the EPA announced Drinking Water Health Advisories for PFOA and PFOS of 70 parts per trillion (0.07 parts per billion, or "ppb"). The EPA develops health advisories to

provide information about substances that can cause human health effects and are known or anticipated to occur in drinking water. EPA's health advisories are based on the best available peer-reviewed studies of the effects of PFOA and PFOS on laboratory animals and were also informed by epidemiological studies of human populations that have been exposed to perfluoroalkyl substances (PFASs). EPA determined that these studies indicate that exposure to PFOA and PFOS over certain levels may result in adverse health effects, including developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes).

44.    Despite the stringency of the EPA's newly-announced guidelines, a survey of similar state standards indicates the EPA advisory still may not be strict enough. For instance, the State of New Jersey has in place a drinking water health advisory for PFOA that is only 0.04 ppb, and New Jersey has proposed lowering this number to just 0.02 ppb.

45.    Defendants have long been aware of the toxicity and persistence of PFOA, PFOS and related chemicals. Yet, Defendants knowingly and intentionally disposed of solid and hazardous waste containing these chemicals resulting in the contamination of groundwater, sediments, private water supplies, fish, the Tennessee River and its tributaries.

**Contamination of the Tennessee River Caused by Defendants' Disposal of PFOA, PFOS, and Related Chemicals**

46.    EPA and the Alabama Department of Environmental Management ("ADEM") have identified Defendants' facilities as past and continuing sources of PFOA and PFOS contamination in the Tennessee River in and around Decatur, Alabama, including the contamination of the River and the area's surface water, porewater, sediments and fish.  The primary source is Defendant

3M's Decatur facility, where high levels of PFOA and PFOS in groundwater continue to discharge to the Tennessee River, and ongoing discharges of contaminated wastewater to the Tennessee River occur via Bakers Creek and the Dry Creek WWTP.

47.    Concentrations of PFOA as high as 4,980 ppb and PFOS as high as 3,890 ppb – or, respectively, more than 70,000 and 55,000 times higher than the EPA's newly-promulgated safety advisory - have been found in groundwater on the 3M site along the south bank of the Tennessee River.  Porewater from the bottom of the river bed near the 3M facility, which is groundwater that discharges into the river, showed average concentrations of PFOA from 0.0977 to 70.4 ppb.

48.    Sediment concentrations in the river have been found as high as an average of 24.1 ppb PFOA, and surface water concentrations as high as an average of 0.420 ppb PFOA at one monitoring site. PFOS concentrations for single samples collected in the lower, middle and upper reaches of the confluence area where Bakers Creek flows into the Tennessee River were 0.450, 0.691 and 0.0237 ppb, respectively. Sediment contamination resulting from past discharges by Defendants represents a continuing source of contamination of surface water in the Tennessee River and a present threat to human health and the environment.

49.    The Decatur Utilities' Dry Creek WWTP discharges into the Tennessee River approximately 2 miles upstream from the 3M Decatur facility, and it is an ongoing significant source of PFOA, PFOS and related chemicals as a result of its disposal of these toxins. Sampling in 2005-06 found that the effluent from the WWTP contained as much as 17.4 ppb of PFOA and 2.85 ppb of PFOS, and the sludge contained as much as 1,875 ppb of PFOA and 2,110 ppb of PFOS.  More recent sampling of the effluent from the WWTP showed lower but still harmful levels of these hazardous chemicals.

50.     Based on the contamination in the Tennessee River caused by Defendants' discharges, ADEM has placed Wheeler Reservoir, from 5 miles upstream of Elk River to the Joe Wheeler Dam, on the state's impaired waters list for PFOS contamination impairing swimming and fish and wildlife uses.

51.     As a result of the contamination in the Tennessee River caused by Defendants' discharges, and based on contamination of fish with PFOS, the Alabama Department of Public Health has issued a fish consumption advisory for portions of Wheeler Reservoir and its tributaries, including: Baker's Creek embayment at Wheeler Reservoir (Morgan County); Wheeler Reservoir mid station, main river channel Tennessee River Mile 296 (Limestone County); Wheeler Reservoir, Tennessee River Miles 303 to 296, area south of the main river channel (Morgan County).

52.     PFOS was detected in every fish specimen collected in the Tennessee River and Bakers Creek near the 3M plant in a November 2012 sampling event. The median filet tissue PFOS concentrations ranged from 25.7 ppb in Reach 03 (backwater area at RM 307.5), upstream of the plant, to 435 ppb in Reach 05 (Mouth of Bakers Creek). Concentrations as high as 103 ppb were found in bass below the Joe Wheeler Dam, nearly 40 miles downstream of the plant at Shoal Creek. Median catfish filet tissue PFOS concentrations ranged from 1.50 ppb in Reach 01 (RM 320) to 283 ppb in Reach 05 (Mouth of Bakers Creek). PFOA was detected at up to 6.06 ppb in fish in Bakers Creek cove and up to 4.01 ppb down river at Mallard Creek.

53.     PFOA has been detected in all of the finished water samples collected from the West Morgan/East Lawrence Water Treatment Plant, about 15 miles downstream from Defendant 3M's Decatur facility on the Tennessee River. In 2013, the Agency for Toxic Substances and Disease Registry found an association between elevated levels of PFOA in the blood serum of tested local residents and use of drinking water from the West Morgan/East Lawrence Water Authority.

54.     At least 4 other public water supplies using water from the Tennessee River downstream from Defendant 3M's Decatur facility have detected PFOA contamination in finished water samples, including the Muscle Shoals WTP, the Florence Municipal Water Supply, and the Sheffield WTP, all of which are approximately 45 miles downstream of 3M's Decatur facility.

55.     Human exposure pathways of these chemicals include swimming, boating, skiing, fishing, eating contaminated fish, and drinking water contaminated with PFOA, PFOS and related chemicals.

### Other Contamination Caused By Defendants' Disposal of PFOA, PFOS and Related Chemicals

56.     The Morgan County Landfill has groundwater that is contaminated with PFOS and related chemicals.  Downgradient monitoring wells have shown PFOS concentrations as high as 14.8 ppb. This groundwater is hydrologically connected to nearby surface water, which, in turn, flows to the Tennessee River. Morgan County Landfill leachate is trucked and/or piped to the Decatur Utilities' Dry Creek WWTP. Recent leachate samples showed 148 ppb PFOA and 175 ppb PFOS. As the result of inadequate treatment, the contaminated leachate contributes to the ongoing discharges of PFOA, PFOS and related chemicals from the Dry Creek WWTP to the Tennessee River.

57.     Groundwater and surface water at and around the Morris Farm Landfill is contaminated with PFOS and related chemicals. Downgradient monitoring wells have shown PFOS concentrations as high as 22.5 ppb. Contaminated groundwater discharges into Dry Creek, which flows into the Tennessee River at the Mallard Creek embayment.  BFI Morris Farms Landfill leachate is also trucked to the Decatur Utilities Dry Creek WWTP.  Recent leachate samples showed 137 ppb PFOA and 93.9 ppb PFOS. As a result of inadequate treatment, the contaminated leachate contributes to the ongoing discharges of PFOA, PFOS and related chemicals from the Dry Creek WWTP to the Tennessee River.

58.     The biosolids that Decatur Utilities spread on agricultural fields in Lawrence, Morgan, and Limestone counties are causing ongoing contamination of soil and groundwater with PFOA, PFOS and related chemicals.  Sampling conducted by EPA in 2007 and 2009 of soils at agricultural sites that received these biosolids found PFOS levels as high as 1,409 ppb and PFOA levels as high as 2,531 ppb.  In February 2009, EPA sampled a number of private water wells (potable and non-potable) near the fields that received biosolids from Decatur Utilities.  Sampling results from twelve non-potable private water wells associated with these fields showed PFOA concentrations up to 6.41 ppb and PFOS up to 0.15 ppb.  Water from drinking water wells at two residences had PFOA levels of 0.6 ppb and 2.2 ppb, and another private drinking water well had a PFOS level of 0.365 ppb.

59.     Groundwater and surface water at and around the Bert Jeffries Landfill (also known as the Browns Ferry Road Site is also contaminated with PFOA, PFOS and related chemicals. PFOA concentrations in groundwater at the landfill were as high as 19.4 ppb in 2013 testing, and PFOS was as high as 25.1 ppb.  This groundwater is hydrologically connected to nearby surface water and contributes to surface water contamination. Off-site surface water contamination was as high as 0.163 ppb PFOA and 1.54 ppb PFOS in 2012-13.  The contaminated surface water flows to the Tennessee River at the Mallard Creek embayment.

## COUNT 1

### RCRA
### IMMINENT AND SUBSTANTIAL ENDANGERMENT

60.     Paragraphs 1 through 59 are hereby realleged and incorporated by reference herein.

61.     PFOA, PFOS, and related chemicals, as described herein, are discarded materials and constitute "solid waste" as defined under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27).

62.     Defendants' have contributed to the past and/or present handling and/or storage and/or transportation and/or disposal of solid and/or hazardous waste, which may present an imminent and substantial endangerment to health and/or the environment within the meaning of section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B).  For instance, as delineated *supra*, Defendants disposal of solid and hazardous wastes contaminated with PFOA, PFOS and related chemicals has caused the contamination of groundwater, sediments, private water supplies, the Tennessee River and its tributaries, fish, and public drinking water supplies utilizing water from the Tennessee River, and this uncontained contamination may present an imminent and substantial endangerment to human health and the environment.

63.     Defendant 3M, through its ownership and operation of the 3M Decatur facility, its ownership of the Bert Jeffries Landfill, and its generation and disposal of wastes containing PFOA, PFOS, and related chemicals, has contributed and is contributing to the handling, storage, treatment, transportation and/or disposal of solid or hazardous waste containing PFOA, PFOS, and related chemicals, which may present an imminent and substantial endangerment to health or the environment within the meaning of Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B).

64.     Defendant BFI, through its ownership and operation of the Morris Farms Landfill, has contributed and is contributing to the handling, storage, treatment, transportation and/or disposal of solid or hazardous waste containing PFOA, PFOS, and related chemicals, which may present an imminent and substantial endangerment to health or the environment within the meaning of Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B).

65.     Defendant City of Decatur, through its ownership and operation of the Morgan County Landfill, has contributed and is contributing to the handling, storage, treatment, transportation and/or disposal of solid or hazardous waste containing PFOA, PFOS, and related chemicals, which

may present an imminent and substantial endangerment to health or the environment within the meaning of Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B).

66.    Defendant Decatur Utilities, through its ownership and operation of the Dry Creek WWTP, has contributed and is contributing to the handling, storage, treatment, transportation and/or disposal of solid or hazardous waste containing PFOA, PFOS, and related chemicals, which may present an imminent and substantial endangerment to health or the environment within the meaning of Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B).

67.    Plaintiff has suffered, and will continue to suffer, irreparable harm caused by this imminent and substantial endangerment and by Defendants' failure to abate the endangerment unless the Court grants Plaintiff the relief sought herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court grant the following relief:

a)    Enter a Declaratory Judgment that Defendants have violated and are in violation of RCRA, 42 U.S.C. § 6972(a)(1)(B), in that Defendants have contributed and/or are contributing to the past and/or present handling, storage, treatment, transportation, and/or disposal of solid or hazardous waste containing PFOA, PFOS and related chemicals that may present an imminent and substantial endangerment to health or the environment;

b)    Enter an injunction pursuant 42 U.S.C. § 6972(a) requiring Defendants to abate and remediate their ongoing disposal of PFOA, PFOS and related chemicals that may present an imminent and substantial endangerment to health or the environment;

c)    Order Defendants to take all such actions as may be necessary to eliminate any present and future endangerment, including, but not limited to:

1)  Enjoin Defendant 3M from disposal of treatment plant sludge or any waste containing PFOA, PFOS or related chemicals at Morris Farms Landfill, Morgan County Landfill, or any other landfill which cannot demonstrate that it has an intact and functioning liner capable of preventing these chemicals from entering groundwater;

2)  Enjoin Defendant Decatur Utilities from disposal of treatment plant sludge or any waste containing PFOA, PFOS or related chemicals at Morris Farms Landfill, Morgan County Landfill, or any other landfill which cannot demonstrate that it has an intact and functioning liner capable of preventing these chemicals from entering groundwater;

3)  Enjoin Defendants Morris Farms Landfill and Morgan County Landfill from accepting for disposal any treatment plant sludge or any waste containing PFOA, PFOS or related chemicals unless and until it can demonstrate that it has an intact and functioning liner capable of preventing these chemicals from entering groundwater;

4)  Enjoin Defendant Decatur Utilities from accepting for disposal treatment plant sludge, landfill leachate, or any other waste containing PFOA, PFOS or related chemicals unless or until it has installed adequate methods of removing these chemicals from its waste stream prior to discharge;

5)  Enjoin Defendants Morris Farms Landfill and Morgan County Landfill from disposing of landfill leachate containing PFOA, PFOS or related chemicals at Decatur Utilities Waste Water Treatment Plant, or any other Waste Water

Treatment Plant that does not have adequate methods of removing these chemicals from its waste stream prior to discharge;

6) Enjoin Defendant 3M from disposal of any waste containing PFOA, PFOS or related chemicals at Decatur Utilities Waste Water Treatment Plant, or any other Waste Water Treatment Plant that does not have adequate methods of removing these chemicals from its waste stream prior to discharge;

7) Require Defendants 3M, Morris Farms Landfill and Morgan County Landfill to remediate groundwater contamination at their facilities, including the Bert Jeffries Landfill;

8) Require Defendant 3M to remediate soil contamination at its facility;

9) Require Defendant 3M to remediate sediment contamination at the Tennessee River;

d)    Award Plaintiff its costs of this litigation, including reasonable attorney and expert witness fees, pursuant to Section 7002(e) of RCRA, 42 U.S.C. § 6972(e); and

e)    Award such other and further relief and the Court deems just and proper.

Respectfully submitted this 22nd day of June, 2016.

/s/  Mark E. Martin
Mark E. Martin
Alabama Bar Number: ASB-9361-A41M
P.O. Box 1486
Oneonta, AL 35121
(205) 516-9350
mmartin@markemartin.com

William Matsikoudis (NJ Bar No. 022391997)
*Admission Requested Pro Hac Vice*

Derek Fanciullo (NJ Bar No.04468-2011)
*Admission Requested Pro Hac Vice*
Matsikoudis & Fanciullo, LLC
270 Marin Boulevard
Jersey City, NJ 07302
bmatsikoudis@mf-legal.com
dfanciullo@mf-legal.com

***Attorneys for Plaintiff Tennessee Riverkeeper, Inc.***