FILED
2016 Jul-29  PM 08:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **TENNESSEE RIVERKEEPER, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **vs.** | ) | **Case  No. 5:16-cv-01029-HGD** |
| | ) | |
| | ) | |
| **3M COMPANY, BFI WASTE SYSTEMS OF ALABAMA, LLC; CITY OF DECATUR, ALABAMA; MUNICIPAL UTILITIES BOARD OF DECATUR, MORGAN COUNTY, ALABAMA; and JOHN DOES 1-10,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

---

## DEFENDANT 3M COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

---

## <u>TABLE OF CONTENTS</u>

<u>**PAGE**</u>

TABLE OF AUTHORITIES ......................................................................... ii

I.      PRELIMINARY STATEMENT ..................................................... 1

II.     STATEMENT OF FACTS ............................................................. 2

        A.     3M's Remediation Activities At Its Facility In Decatur,
               Alabama ...................................................................................... 2

        B.     Plaintiff Files This RCRA Action. ........................................... 3

III.    APPLICABLE STANDARDS ....................................................... 4

        A.     Rule 12(b)(1) .............................................................................. 4

        B.     Rule 12(b)(6) .............................................................................. 5

IV.     ARGUMENTS AND AUTHORITIES ......................................... 5

        A.     The Complaint Should Be Dismissed For Lack Of Subject
               Matter Jurisdiction .................................................................... 5

               1.     Plaintiff's RCRA claim is moot. .................................... 5

               2.     The Court should exercise its discretion and abstain. ...... 8

                      a.     The primary jurisdiction doctrine applies because
                             this case involves technical scientific issues within
                             ADEM's expertise. ......................................... 9

                      b.     Abstention is also warranted because Alabama has
                             authority to manage its environmental program. ..... 10

        B.     Plaintiff's Claim Fails As A Matter of Law. ............................ 11

               1.     3M's Discharge From Its Site Is Excluded From The
                      Definition of Solid Waste Under RCRA. ...................... 12

               2.     3M's Conduct Does Not Pose An Imminent And
                      Substantial Endangerment. ............................................. 13

V.      CONCLUSION AND REQUEST FOR RELIEF .......................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................5

*Black Warrior Riverkeeper, Inc. v. Cherokee Mining, LLC*,
  637 F. Supp. 2d 983 (N.D. Ala. 2009)............................................6, 7

*Boyes v. Shell Oil Products Co.*,
  199 F.3d 1260 (11th Cir. 2000) .......................................8, 9, 10, 11

*Burford v. Sun Oil*,
  319 U.S. 315 (1943)..........................................................................10

*City of Fresno v. United States*,
  709 F. Supp. 2d 934 (E.D. Cal. 2010) .............................................15

*Clean Air Council v. Sunoco, Inc. (R&M)*,
  No. CIV.A. 02-1553 GMS, 2003 WL 1785879 (D. Del. Apr. 2,
  2003) ..................................................................................................8

*Comfort Lake Ass'n, Inc. v. Dresel Contracting, Inc.*,
  138 F.3d 351 (8th Cir. 1998) ..............................................................6

*Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*,
  704 F.3d 413 (5th Cir. 2013) ..............................................................6

*Davis Bros., Inc. v. Thornton Oil Co.*,
  12 F.Supp.2d 1333 (M.D. Ga.1998) ...........................................6, 8, 9

*Families Concerned About Nerve Gas Incineration v. U.S. Dep't of
  Army*,
  380 F. Supp. 2d 1233 (N.D. Ala. 2005).............................................10

*Florida Pub. Interest Research Grp. Citizen Lobby, Inc. v. E.P.A.*,
  386 F.3d 1070 (11th Cir. 2004) ..........................................................4

*Florida Wildlife Fed'n, Inc. v. S. Florida Water Mgmt. Dist.*,
  647 F.3d 1296 (11th Cir. 2011) .......................................................4, 7

*Gamble v. PinnOak Res., LLC*,
   511 F. Supp. 2d 1111 (N.D. Ala. 2007)..................................................................9

*Lawrence v. Dunbar*,
   919 F.2d 1525 (11th Cir. 1990) ...........................................................................5

*Lewis v. FMC Corp.*,
   786 F.Supp. 2d 690 (W.D.N.Y. 2011)................................................................14

*Little v. Louisville Gas & Elec. Co.*,
   33 F. Supp. 3d 791, 799, 812 (W.D. Ky. 2014) *aff'd in part sub
   nom.,*      805 F.3d 695 (6th Cir. 2015) .............................................................4

*M.D. v. Perry*,
   799 F. Supp. 2d 712 (S.D. Tex. 2011)................................................................5

*McCormick v. Halliburton Co.*,
   No. CIV-11-1272-M, 2012 WL 1119493 (W.D. Okla. Apr. 3,
   2012) .................................................................................................................8

*Meghrig v. KFC W., Inc.*,
   516 U.S. 479 (1996)...................................................................................14, 15

*Murtaugh v. New York*,
   810 F. Supp. 2d 446 (N.D.N.Y. 2011)................................................................5

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
   491 U.S. 350 (1989)...................................................................................10, 11

*Ohio Valley Environmental Coalition, Inc. v. Hobet Mining, LLC*,
   No. 3:08–0088, 2008 WL 5377799 (S.D.W.Va. Dec. 18, 2008) .......................8

*U.S. ex rel. Osheroff v. Humana Inc.*,
   776 F.3d 805 (11th Cir. 2015) .......................................................................5, 13

*OSI, Inc. v. United States*,
   510 F. Supp. 2d 531 (M.D. Ala. 2007), *aff'd,* 525 F.3d 1294 (11th
   Cir. 2008) ...................................................................................................14, 15

*Palumbo v. Waste Technologies Indus.*,
   989 F.2d 156 (4th Cir.1993) ............................................................................11

*Parker v. Scrap Metal Processors, Inc.*,
    386 F.3d 993 (11th Cir. 2004) ............................................................................14

*Reiter v. Cooper*,
    507 U.S. 258 (1993)..........................................................................................10

*Scotchtown Holdings LLP v. Town of Goshen*,
    No. 08-CV-4720-(CS), 2009 WL 27445 (S.D.N.Y. 2009) ................................13

*Smith v. GTE Corp.*,
    236 F.3d 1292 (11th Cir. 2001) ........................................................................10

*Sojitz Am. Capital Corp. v. Keystone Equip. Fin. Corp.*,
    88 F. Supp. 3d 59 (D. Conn. 2015).....................................................................5

*Stratford Holding, LLC v. Foot Locker Retail Inc.*,
    No. CIV-12-0772-HE, 2013 WL 5550461 (W.D. Okla. Oct. 8,
    2013) ...................................................................................................................8

*Troiano v. Supervisor of Elections in Palm Beach Cty., Fla.*,
    382 F.3d 1276 (11th Cir. 2004) ..........................................................................4

*Water Keeper All. v. U.S. Dep't of Def.*,
    152 F. Supp. 2d 163 (D.P.R. 2001) ...................................................................12

**Statutes**

42 U.S.C. § 6903(27) .................................................................................................12

**Other Authorities**

40 C.F.R. § 261.30-35.................................................................................................12

Fed. R. Evid. 201 .......................................................................................................13

Fed. R. of Civ. P.12..........................................................................................1, 4, 5, 13

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), 3M Company ("3M" or "Defendant") requests that this Court dismiss the Complaint for Declaratory and Injunctive Relief (the "Complaint" or "Compl.") filed by Tennessee Riverkeeper, Inc. ("Riverkeeper" or "Plaintiff"), as follows:

## I.     PRELIMINARY STATEMENT

The Complaint should be dismissed under Rule 12(b)(1).  The Court lacks subject matter jurisdiction because 3M's remediation agreements with governmental entities moot Plaintiff's claims.  In addition, this Court should abstain from hearing the case.  The Alabama Department of Environmental Management ("ADEM") is authorized by the Environmental Protection Agency ("EPA") to manage a comprehensive environmental regulatory scheme pursuant to which it entered into agreements with 3M for the remediation of 3M's property. Because that plan of remediation is being adhered to by 3M and is effective, Plaintiff's suit serves no useful purpose and the Court's involvement may create contradictory requirements for Defendant.

Plaintiff's Complaint should also be dismissed under Rule 12(b)(6). Plaintiff has failed to state a claim for relief as a matter of law because:  (1) 3M's industrial wastewater discharges from its site are excluded from the definition of "solid waste" under RCRA, and (2) Plaintiff fails to allege facts that demonstrate an imminent and substantial endangerment exists.

Accordingly, Plaintiff's Complaint must be dismissed.

## II.    STATEMENT OF FACTS

### A.    3M's Remediation Activities At Its Facility In Decatur, Alabama

For more than 40 years, 3M manufactured a class of compounds known as perfluorochemicals ("PFCs").  PFCs were used in life improving products, such as Scotchgard™ Brand Protector, Scotchban™ and aqueous film forming foams (AFFF).[1]  Nonetheless, in 2000, 3M announced that it would phase-out of the manufacture and use of PFOA and PFOS.[2]  Although 3M has always (correctly) believed that PFCs are not harmful to human health or the environment, it agreed to conduct significant remediation at and around its facilities to address the presence of PFCs in the environment.[3]

Over the last twenty years, 3M has been a party to a series of binding agreements with ADEM and EPA.[4]  In 2008, ADEM and 3M entered into a National Pollutant Discharge Elimination System ("NPDES") Remedial Action

---

[1] 3M Light Water AFFF, a fire suppressant, was widely recognized as the best in its class. Often referred to as a "miracle product," it was used around the world to suppress fuel-fed fires.

[2] *See* Ex. A (Letter from Dr. Larry Wendling at 3M to EPA (March 13, 2003)), at 3 ("3M decided to phase-out its perfluorooctanyl chemistry substantially by the end of 2000. This phase-out included terminating all PFOA production for commercial sale by the end of 2002.").

[3] For example, on March 28, 1996, 3M and ADEM entered into a Consent Order to respond to solid waste management concerns.  *See* Ex. B (Consent Order).  On April 6, 2005, ADEM and 3M entered into a Corrective Action Agreement ("CAA").  *See* Ex. C (CAA) at 5. Both agreements provided for judicial enforcement if 3M failed to comply.  *See* Ex. B (Consent Order) and Ex. C (CAA).  On October 25, 2004, 3M entered into a Memorandum of Understanding ("MOU") with EPA pursuant to which it analyzed the impact of PFOA in the environment.  *See* Ex. D (EPA MOU).

[4] *See supra* note 3.

Agreement ("RAA") "to provide a mechanism…for the performance and oversight of remediation…that will be undertaken by 3M" on and around its site.[5]  The RAA obligates 3M to install a multilayer cap over a portion of its property; install a network of monitoring wells; perform sampling and analysis; relocate certain materials; and restore the site's environment.[6]  Throughout this process, "3M agree[d] to follow ADEM and EPA guidance" and submit certified Annual Reports.[7]  This RAA is in effect until 2019, and is judicially enforceable if 3M fails to comply.[8]

### B.    Plaintiff Files This RCRA Action.

On June 23, 2016, Plaintiff filed this citizen suit pursuant to Section 7002(a)(1)(B) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B).   The Complaint alleges that it seeks to "abate the imminent and substantial endangerment to health and the environment caused by Defendants' disposal of…waste containing perfluorooctanoic acid ("PFOA"), perfluorooctane sulfonate ("PFOS"), and related chemicals[, (together "PFCs"),] at several locations in and around Decatur, Alabama."[9]  Plaintiff asserts that 3M

---

[5] Ex. E (RAA), at 1.

[6] *Id.* at 3.

[7] *Id.* at 3, 4.

[8] *See id.* at 6.

[9] Compl. at ¶ 1.

disposed of PFCs in groundwater and surface water that has contaminated the Tennessee River.[10]

Plaintiff attempts to assert a claim under Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B).  Plaintiff alleges that it has suffered and will continue to suffer irreparable harm unless the Court grants the relief sought, which includes declaratory and injunctive relief, as well as attorneys' fees and costs.[11]

### III.   APPLICABLE STANDARDS

### A.   Rule 12(b)(1)

A court should dismiss cases which are moot for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).[12]  A case is moot when there is no longer a live controversy.[13]  "[B]ecause mootness is jurisdictional, dismissal is mandated."[14]  Similarly, courts should dismiss cases when abstention is warranted.[15]  Plaintiff's

---

[10] *Id.* at ¶¶ 1; 47; 48.

[11] *See id.* at ¶ 67.

[12] *See Troiano v. Supervisor of Elections in Palm Beach Cty., Fla.*, 382 F.3d 1276, 1282 (11th Cir. 2004) ("If events that occur subsequent to the filing of a lawsuit…deprive the court of the ability to give the plaintiff…meaningful relief,…the case is moot and must be dismissed...").

[13] *See Florida Wildlife Fed'n, Inc. v. S. Florida Water Mgmt. Dist.*, 647 F.3d 1296, 1299 (11th Cir. 2011) (dismissing appeal as moot because appellants did not show a live case existed after plaintiffs and EPA had already entered into a consent decree); *Little v. Louisville Gas & Elec. Co.*, 33 F. Supp. 3d 791, 799, 812 (W.D. Ky. 2014) *aff'd in part sub nom.*, 805 F.3d 695 (6th Cir. 2015) (court dismissed plaintiff's RCRA claims, determining it could do nothing to redress the claims and finding them moot because of an order in place with the government that addressed the problems of which plaintiff complained).

[14] *Florida Pub. Interest Research Grp. Citizen Lobby, Inc. v. E.P.A.*, 386 F.3d 1070, 1086 (11th Cir. 2004).

[15] *See Sojitz Am. Capital Corp. v. Keystone Equip. Fin. Corp.*, 88 F. Supp. 3d 59, 61 (D. Conn. 2015) ("A motion to dismiss based on the abstention doctrine is [] considered as a motion

jurisdictional allegations are not entitled to a presumption of truthfulness.[16]

Additionally, the court may consider evidence outside the complaint.[17]

## B.    Rule 12(b)(6)

To survive a Rule 12(b)(6) challenge, the "complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'"[18] Plaintiff's Complaint should be dismissed because it fails to satisfy these standards.

## IV.    ARGUMENTS AND AUTHORITIES

## A.    The Complaint Should Be Dismissed For Lack Of Subject Matter Jurisdiction.

### 1.    Plaintiff's RCRA claim is moot.

Plaintiff's RCRA claim is moot and should be dismissed. A RCRA claim is moot when a defendant is already remediating the alleged contamination at issue

---

made pursuant to Rule 12(b)(1).") (citations omitted); *M.D. v. Perry*, 799 F. Supp. 2d 712, 715, n.3 (S.D. Tex. 2011) ("[FRCP] 12(b)(1) governs challenges to a court's subject matter jurisdiction," and "Courts also favor Rule 12(b)(1) when evaluating Burford abstention.") (citations omitted); *Murtaugh v. New York*, 810 F. Supp. 2d 446, 464 (N.D.N.Y. 2011) ("A motion to dismiss based on the abstention doctrine is ... considered as a motion made pursuant to Rule 12(b)(1).").

[16] *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

[17] *See U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 811-12 (11th Cir. 2015) ("For purposes of Rule 12(b)(1) review for a factual attack on jurisdiction…the district court was permitted to consider extrinsic documents.").

[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

and the state is overseeing the cleanup.[19]  When events render claims moot, a plaintiff must show a serious prospect that the alleged conduct will continue notwithstanding the corrective actions already under way.[20]  Plaintiff has not (and cannot) allege that there is a "serious prospect" that an imminent and substantial endangerment will continue to exist given 3M's remedial activity pursuant to governmental agreements.

Without question, the NPDES RAA with ADEM already addresses the conduct about which Plaintiff complains.[21]  3M has completed significant

---

[19] *See Black Warrior Riverkeeper, Inc. v. Cherokee Mining, LLC*, 637 F. Supp. 2d 983, 987-89 (N.D. Ala. 2009) (distinguishing voluntary and involuntary mootness tests and noting that "[*Black Warrior Riverkeeper, Inc.*] was obligated to demonstrate that there is a serious prospect that the CM violations described in its complaint will continue to occur notwithstanding the consent decree.") (citations omitted); *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 426 (5th Cir. 2013) (analyzing mootness in a CWA citizens suit for discharging pollutants "by asking whether the [] plaintiff has proven that there is a realistic prospect that the violations alleged in its complaint will continue notwithstanding government-mandated corrective action. If not, the case is moot….[T]his 'realistic prospect' standard is consistent with Congress's intent that citizen suits supplement rather than supplant government action.") (citations and internal marks omitted); *Comfort Lake Ass'n, Inc. v. Dresel Contracting, Inc.*, 138 F.3d 351, 355 (8th Cir. 1998) (holding that in the context of compliance activities mandated by a governmental agreement, the citizen plaintiff must prove "there is a realistic prospect that the violations alleged in [its] complaint will continue notwithstanding" the agreement); *Davis Bros., Inc. v. Thornton Oil Co.*, 12 F.Supp.2d 1333, 1338 (M.D. Ga.1998) ("[P]laintiff has presented no credible evidence supporting a finding of imminent and substantial endangerment to health or the environment [...] [m]oreover, the proposed remedy of injunctive relief is moot because Conoco has already agreed to remediate the site and pay for any costs associated with the cleanup, and the state is overseeing the cleanup more effectively than the court ever could. Thus, the RCRA claim fails on the merits, and is also moot.").

[20] *See supra* note 19 (all cases).

[21] *See, e.g., Black Warrior Riverkeeper, Inc.*, 637 F. Supp. 2d at 987 (finding the defendant's agreement with ADEM mooted plaintiff's claim).  *See also* Ex. B (Consent Order), Ex. C (CAA), Ex. D (EPA MOU), and Ex. E (RAA).  Because of 3M's remediation efforts pursuant to these agreements, PFC levels have shown marked declines on 3M's premises, its discharges from surface water and ground water from its property, and discharges of treated

remediation on its site and adjacent property pursuant to the RAA, which directly addresses Plaintiff's concerns regarding 3M's discharge to its site and adjacent property.[22]  Because 3M is already following an effective plan of remediation on its site and the adjacent property pursuant to the RAA, the Court is limited in the relief it could offer Plaintiff.[23]

Moreover, Plaintiff's displeasure with 3M's remediation efforts does not preclude dismissal on mootness grounds because ADEM's decisions regarding what remediation is necessary is entitled to deference.[24]

---

water into the Tennessee River. As a consequence, levels of PFCs in fish in the Tennessee River have declined dramatically.  *See* Ex. F (2016 ADPH Fish Advisory, ALABAMA DEPARTMENT PUBLIC HEALTH ("ADPH") (June 2016), http://www.adph.org/tox/Default.asp?id=1360 (documenting the most recent fish consumption advisories issued by the ADPH at "one-meal-per-month" for the Baker's Creek embayment for PFOS, which is an improvement over the "no-consumption" advisory that existed in this location as recently as 2012, which illustrates the declining levels of PFCs).

[22] *See, e.g.,* Ex. G (RAA Annual Report dated 2008), at 3 ("3M will relocate sediment containing FCs from pond at Wetlands Edge Environmental Center (that received stormwater run-off from 3M's former sludge incorporation area ("FSIA") fields and groundwater from a well) under the cap.  Following approval by ADEM and BP, site preparation activities were begun in mid-November 2008, and will be complete in 2009.").  The Annual Report dated 2009 notes that the sludge removal and placement into the FSIA that started in the fall of 2008 was completed on July 1, 2009.  *See* Ex. H (RAA Annual Report dated 2009), at 2.  Furthermore, the 2009 Report notes that 3M removed the sediment from the Environmental Center on April 24, 2009; and completed the installation of the soil cover on August 11, 2009.  *See id.* at 3.

[23] *See Florida Wildlife*, 647 F.3d at 1303-04 ("If, due to events that have happened…the court can no longer redress the injuries claimed by the parties, the case is moot and should be dismissed."); *Black Warrior Riverkeeper, Inc., LLC*, 637 F. Supp. 2d at 986-87 ("[T]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)....A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief.") (quoting *Frulla v. CRA Holdings, Inc.,* 543 F.3d 1247, 1250–51 (11th Cir.2008)).

[24] *See, e.g., Black Warrior Riverkeeper, Inc.*, 637 F. Supp. 2d at 987-89 (explaining that "[u]nless ADEM is given deference, its reason for existence becomes problematic," and noting

In sum, Plaintiff's RCRA claim is moot and should be dismissed.

## 2.    The Court should exercise its discretion and abstain.

This Court may also dismiss this case for lack of subject matter jurisdiction because abstention is warranted.  Abstention is warranted when, as here, a case involves technical and scientific issues within the expertise of the state environmental regulatory agency[25] or involves the state's authority to manage its environmental program. [26]

---

that plaintiff could not meet its burden of showing that its citizen suit was not moot "simply by criticizing the consent order as somehow inadequate, and by asking this court to assume a supervisory role over ADEM and CM"); *Ohio Valley Environmental Coalition, Inc. v. Hobet Mining, LLC,* No. 3:08–0088, 2008 WL 5377799 *7-8 (S.D.W.Va. Dec. 18, 2008) (finding a CWA citizen suit partially moot because defendant had already agreed to do through the consent order what plaintiffs were requesting through their suit; although the schedule for compliance was different than what plaintiff's sought, the court found it reasonable); *Clean Air Council v. Sunoco, Inc. (R&M)*, No. CIV.A. 02-1553 GMS, 2003 WL 1785879, at *3-4 (D. Del. Apr. 2, 2003) (flexible terms of the agreement did not render it unreasonable).

[25] *See, e.g., McCormick v. Halliburton Co.,* No. CIV-11-1272-M, 2012 WL 1119493 (W.D. Okla. Apr. 3, 2012) (invoking primary jurisdiction to abstain in a RCRA claim because the state environmental department was involved); *Davis*, 963 F. Supp. at 997–98 (accepting the primary jurisdiction defense because the RCRA claim raised issues within the expertise of the state environmental department; and "the court's involvement would likely cause further delay of the investigation of the site and, in view of [the state's] extensive involvement, would result in a substantial duplication of effort.  Moreover, such intervention has not been shown to be necessary at this time to protect health or the environment.").

[26] *See Stratford Holding, LLC v. Foot Locker Retail Inc.*, No. CIV-12-0772-HE, 2013 WL 5550461, at *3, 6 (W.D. Okla. Oct. 8, 2013) (granting motion to dismiss RCRA claim because administrative consent order was already in place, and even if it was not, court would abstain on primary jurisdiction or *Burford* grounds).  *See also Boyes v. Shell Oil Products Co.*, 199 F.3d 1260, 1265-65 (11th Cir. 2000) ("The purpose of *Burford* abstention is to protect complex <u>state</u> administrative processes from undue <u>federal</u> interference.  The primary jurisdiction doctrine is similarly concerned with <u>protecting the administrative process</u> from <u>judicial interference</u>….In the context of this case, *Burford* abstention and the primary jurisdiction doctrine are different labels for the same thing.") (internal marks and citations omitted) (emphasis added).  The primary jurisdiction doctrine focuses on whether an administrative agency is better suited than a court to handle the issue (this doctrine does not focus on a <u>federal</u> court's interference like the *Burford* doctrine does).

### a.    The primary jurisdiction doctrine applies because this case involves technical scientific issues within ADEM's expertise.

The Court may abstain on primary jurisdiction grounds because: (1) the issues presented are within the scientific and technical expertise of ADEM; (2) ADEM is charged with managing these issues and, therefore, has expertise in the area; (3) there is a risk that, if the court were to fashion a remedy as Plaintiff requests, it would destroy the uniformity of Alabama's environmental management efforts; (4) ADEM and 3M have entered into agreements which address the issues in this case; and (5) 3M has worked diligently in conjunction with ADEM to remedy the alleged contamination.[27]  Plaintiff complains about 3M's management of waste containing PFCs.[28]  However, 3M's discharge and remediation activities conform to ADEM and EPA's regulations.[29]  If the Court enjoins 3M from activities that 3M is authorized to pursue, such an order may conflict with ADEM's efforts to regulate solid waste under EPA's guidance.[30]  Accordingly, the

---

[27] *See Gamble v. PinnOak Res., LLC*, 511 F. Supp. 2d 1111, 1126 (N.D. Ala. 2007) ("No fixed formula exists for applying the doctrine of primary jurisdiction….five factors to guide a judge's decision to defer to an agency [include]: (1) the degree of an agency's discretion over the matter; (2) the relative expertise of the agency and the courts in making the required determinations; (3) the need for uniformity; (4) the clarity of any pre-existing agency pronouncements; and (5) the status of any on-going proceedings before the agency.") (citations omitted). *See also Boyes*, 199 F.3d at 1265 (*citing United States v. W. Pac. R.R. Co.,* 352 U.S. 59, 63 (1956)) ("The primary jurisdiction doctrine is…concerned with protecting the administrative process from judicial interference.").

[28] *See* Compl. at ¶¶ 1, 3, 32-34, 35, 45-46, 62-63.

[29] *See supra* note 3.

[30] *See Davis*, 963 F. Supp. at 998 (noting that what plaintiffs requested in the RCRA suit would conflict with the state's efforts and that "plaintiffs have produced no evidence that human

9

Court should abstain and dismiss Plaintiff's claim for lack of subject matter jurisdiction.[31]

### b. Abstention is also warranted because Alabama has authority to manage its environmental program.

Known by the name of the Supreme Court case from which it came, the *Burford* abstention doctrine authorizes federal courts to abstain from cases to avoid interfering with state administrative agency proceedings where federal review of the issues in the case might be disruptive of the "state['s] efforts to establish a coherent policy with respect to a matter of substantial public concern."[32] Abstention is appropriate in RCRA cases when a state manages its own EPA-approved regulatory program and plaintiff's action amounts to a collateral attack against the state's decisions.[33]

---

health or the environment will be subjected to imminent danger in the interim if the court declines jurisdiction to permit the agency to develop its own remedial plan" and "plaintiffs have not shown a real imperative for this court to act as opposed to letting the agency complete its investigation and direct the remediation.").

[31] *See Reiter v. Cooper*, 507 U.S. 258, 268–69 (1993) ("Referral of the issue to the administrative agency [under the primary jurisdiction doctrine] does not deprive the court of jurisdiction; it has discretion either to retain jurisdiction [and stay the case] or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice."); *Smith v. GTE Corp.*, 236 F.3d 1292, 1298, n.3 (11th Cir. 2001) ("Primary jurisdiction is a judicially created doctrine whereby a court…may dismiss or stay an action pending a resolution of some portion of the actions by an administrative agency.").

[32] *See Burford v. Sun Oil*, 319 U.S. 315 (1943); *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361-62 (1989) (distilling the abstention doctrine that stemmed from *Burford*) (citation omitted).

[33] *See, e.g., Boyes*, 199 F.3d at 1266 n. 12 (noting disagreement about whether *Burford* abstention is appropriate in a RCRA case and suggesting that where a state manages a federally approved environmental program, *Burford* abstention might be appropriate when plaintiff collaterally attacks the permitting decisions of a governmental entity).  *See also Families*

Plaintiff's action amounts to a collateral attack on ADEM's decision to authorize 3M's discharges pursuant to its NPDES permit and landfill-discharge certificates.[34]  Should this Court issue the relief Plaintiff requests for conduct that is fully permitted, the Court's actions would disrupt Alabama's efforts to establish a coherent policy with regard to waste management.  Interference in Alabama's regulatory enforcement is exactly what the *Burford* abstention doctrine is designed to protect against.  Abstention on *Burford* grounds is warranted here because federal review of Plaintiff's claim "would…disrupt[]…[Alabama's] efforts to establish a coherent [environmental] policy."[35]

## B.   Plaintiff's Claim Fails As A Matter of Law.

Plaintiff's claim fails as a matter of law because: (1) it complains about discharges by 3M which are exempt under RCRA; and (2) it fails to allege facts

---

*Concerned About Nerve Gas Incineration v. U.S. Dep't of Army*, 380 F. Supp. 2d 1233, 1258 (N.D. Ala. 2005) ("Challenges to the adequacy of the state-issued permit are committed to the state administrative and judicial process…"); *Coalition for Health Concern,* 60 F.3d at 1193–95; *Friends of Santa Fe County*, 892 F.Supp. at 1348 (abstaining on *Burford* and primary jurisdiction grounds, and explaining that "Plaintiffs' assertion…is little more than an indirect collateral attack on the NMED's… present regulatory course."); *Palumbo v. Waste Technologies Indus.,* 989 F.2d 156, 159–60 (4th Cir.1993) (noting that "plaintiffs' [RCRA] complaint is nothing more than a collateral attack on the…permitting decisions of the…EPA").

[34] 3M discharges its waste pursuant to an NPDES permit and discharges to BFI and Morgan County landfills pursuant to certificates authorized by ADEM.  *See* Ex. I (NPDES Permit), Ex. J (Certificate to Discharge to BFI), Ex. K (Certificate to Discharge to Morgan County).  *See also Friends of Santa Fe County,* 892 F.Supp. at 1348–49.

[35] *Boyes*, 199 F.3d at 1265  (citing *New Orleans Pub. Serv., Inc.,* 491 U.S. at 361).  *See also Coalition for Health Concern*, 60 F.3d at 1194–95 (finding *Burford* abstention appropriate in a RCRA action because "Kentucky has an overriding interest in the protection of its environment…" and "according to the circumstances of this case, the exercise of federal review at this juncture would be disruptive of Kentucky's efforts…").

which demonstrate an imminent and substantial endangerment to health or the environment.

### 1.    3M's Discharge From Its Site Is Excluded From The Definition of Solid Waste Under RCRA.

Plaintiff's RCRA claim, to the extent it is based on discharges covered by 3M's NPDES Permit, should be dismissed because that discharge does not qualify as "solid waste" under RCRA.[36]   To prevail on a RCRA claim, a plaintiff must show, *inter alia*, that the alleged contamination involves solid or hazardous waste.[37]   Industrial wastewater discharges regulated under the Clean Water Act ("CWA") pursuant to an NPDES permit are excluded from the definition of solid waste under RCRA.[38]

Plaintiff contends that 3M's Decatur facility releases PFCs into the groundwater and surface water, through which the chemicals are discharged into the Tennessee River and its tributaries.[39]   3M, however, is authorized to discharge industrial wastewater to surface water via point sources on its property pursuant to

---

[36] *See Water Keeper All. v. U.S. Dep't of Def.*, 152 F. Supp. 2d 163, 169-70 (D.P.R. 2001) (dismissing plaintiffs' RCRA claim to the extent that they relied on discharges of solid waste that were covered by NPDES permit).  *See also* 42 U.S.C. § 6903(27).  The majority of Plaintiff's allegations relate to 3M's industrial wastewater discharge.  *See* Compl. at ¶¶ 34, 46-48.

[37] 42 U.S.C. § 6972(a)(1)(B).  Neither EPA nor ADEM have specifically classified PFOA and PFOS as hazardous waste.  *See* 40 C.F.R. § 261.30-35.

[38] 42 U.S.C. § 6903(27).

[39] *See* Compl. at ¶¶ 32, 34, 47–48.

its NPDES permit.[40]  3M's NPDES permit covers: (1) discharge into surface water;

(2) discharge from 3M's wastewater treatment plant ("WWTP") into the Tennessee

River; (3) discharge of treated groundwater; and (4) discharge of stormwater runoff

from the FSIA.[41]  3M requests that the Court take judicial notice of the facts

contained in these permits because they can be "accurately and readily determined

from sources whose accuracy cannot reasonably be questioned."[42]

Because the discharges discussed in the Complaint occur via point sources

authorized by 3M's NPDES permit, Plaintiff's RCRA claim should be dismissed.

### 2.    3M's Conduct Does Not Pose An Imminent And Substantial Endangerment.

The Complaint fails to allege facts demonstrating that 3M's conduct poses

an imminent and substantial endangerment to health or the environment.[43]   To

---

[40] *See* Ex. I (NPDES Permit).

[41] *See id.* at 2; 4-19 (of pdf).  Discharge to the FSIA was authorized pursuant to an NPDES permit. *See* Ex. E (RAA), at 2 ("From 1978 through 1998, 3M incorporated…WWTP[] sludge into the…Site. This sludge incorporation program was authorized by ADEM in NPDES permit No. AL 0000205..."). Given that remediation of the FSIA is being conducted pursuant to an NPDES remediation agreement, the discharge from the FSIA pursuant to a point source is also excluded from RCRA.  *See, e.g., Williams Pipe Line Company,* 964 F. Supp. at 1328–29, n. 27 (distinguishing cases finding discharge into soil subject to RCRA because in those cases, defendants were not subject to remediation plan established under an NPDES permit as was the case in *Williams*—and here).

[42] Fed. R. Evid. 201.  *See also U.S. ex rel. Osheroff*, 776 F.3d at 812, n.4 (citing Fed. R. Evid. 201) (explaining that a court may consider judicially noticed documents and that "[c]ourts may take judicial notice of publicly filed documents…at the Rule 12(b)(6) stage.").

[43] *See Scotchtown Holdings LLP v. Town of Goshen*, No. 08-CV-4720-(CS), 2009 WL 27445 (S.D.N.Y. 2009) (dismissing plaintiff's case at the motion to dismiss stage, finding no imminent and substantial endangerment from contamination of groundwater with road salt since, if groundwater was contaminated, it would not be approved for human consumption).

prevail on a RCRA claim, a citizen must show that: (1) a person; (2) contributed or is contributing to; (3) the past or present handling, storage, treatment or disposal of solid or hazardous waste; (4) which may present an imminent and substantial endangerment to health or the environment.[44]

Plaintiff must do more than allege the mere presence of solid or hazardous waste in the environment.[45]  Plaintiff must allege that, due to the presence of the waste, an imminent, or "immediate," threat of a serious harm exists.[46]  The risk cannot be speculative or too remote in time.[47]  Plaintiff must allege facts which establish that the endangerment is serious and that there is a need for action.[48]

Plaintiff fails to allege facts demonstrating an immediate, current threat of serious harm.  Plaintiff simply mentions that certain levels of PFCs "were" and "have been found," but fails to include details (*i.e.*, dates of samplings) that

---

[44] *See* 42 U.S.C. §6972(a)(1)(B).

[45] *See OSI, Inc. v. United States*, 510 F. Supp. 2d 531, 540 (M.D. Ala. 2007), *aff'd,* 525 F.3d 1294 (11th Cir. 2008) (citation omitted); *Lewis v. FMC Corp.,* 786 F.Supp. 2d 690, 710 (W.D.N.Y. 2011).

[46] *See Meghrig v. KFC W., Inc.*, 516 U.S. 479, 485 (1996); *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1015 (11th Cir. 2004) (*citing Meghrig*, 516 U.S. at 485; *Cox*, 256 F.3d at 292) (noting a need to show "that there is a potential for an imminent threat of a serious harm" and explaining that "substantial" means "serious").

[47] *See Meghrig*, 516 U.S. at 485 ("An endangerment can only be imminent if it threatens to occur immediately…there must be a threat which is present *now*…"); *Lewis,* 786 F.Supp. 2d at 706 (noting the need for evidence of a connection of the cited standards to potential and imminent risks to humans or the environment, not "merely a speculative prospect of future harm, the seriousness of which is equally hypothetical").

[48] *See OSI, Inc.*, 510 F. Supp. 2d at 540 ("[T]he fact that remedial activity…has commenced at a site greatly reduces the likelihood that a threat to health or the environment is imminent).

demonstrate an imminent threat exists or that the levels found in the Tennessee River pose a serious endangerment.[49]  In addition, because 3M began to phase out of the chemistries in 2000,[50] and 3M has been remediating its site pursuant to governmental agreements, there is no "imminent" threat.[51]  Accordingly, Plaintiff's RCRA claim should be dismissed because it fails to allege sufficient facts demonstrating an imminent and substantial endangerment.

## V.    CONCLUSION AND REQUEST FOR RELIEF

For all the foregoing reasons, 3M requests that the Court enter an order:  (1) granting 3M's motion; (2) dismissing Plaintiff's Complaint; and (3) granting 3M such other relief, at law and in equity, and which the Court deems just and proper.

---

[49] *See* Compl. at ¶¶ 47-48.  *See also, e.g., Meghrig*, 516 U.S. at 485–86 ("[RCRA's] timing restriction is plain: An endangerment can only be 'imminent' if it 'threaten[s] to occur immediately,' and the reference to waste which 'may present' imminent harm quite clearly excludes waste that no longer presents such a danger."); *City of Fresno v. United States*, 709 F. Supp. 2d 934, 942 (E.D. Cal. 2010) (dismissing a RCRA case because, *inter alia*, although the expert recited RCRA's "magic words," the testimony did not add anything beyond that TCP levels exceeded the State's non-binding public health goals and, thus, it lacked the factual detail and specific exposure evidence found sufficient in other cases).

[50] *See* Ex. A (Letter from Dr. Larry Wendling at 3M to EPA dated March 13, 2003), at 3.

[51] *See OSI, Inc.,* 510 F.Supp.2d at 540 (granting defendant's summary judgment motion because "OSI has presented no[ ] evidence to suggest that an imminent and substantial endangerment…exists….[Defendant] is conducting a remediation program in conjunction with ADEM to repair any contamination and resulting dangers that do exist."); *City of Fresno*, 709 F. Supp. 2d at 937-38 (dismissing plaintiff's RCRA claim, explaining it was unclear how plaintiff demonstrated an imminent and substantial endangerment and noting that the state "ha[d] oversight of the remediation and ha[d] the scientific understanding and resources necessary to investigate and remediate alleged hazards.") (citation omitted).

Dated:  July 29, 2016
       Birmingham, Alabama

Respectfully submitted,


_____*/s/ William S. Cox III*_____
M. Christian King
Harlan I. Prater, IV
William S. Cox III
William H. Brooks
LIGHTFOOT, FRANKLIN & WHITE,
L.L.C.
400 20th Street North
Birmingham, Alabama 35203
Telephone:  (205) 581-0700
Facsimile:  (205) 581-0799

*and*

William A. Brewer III
(*pro hac vice* to be filed)
wab@brewerattorneys.com
Michael J. Collins
(*pro hac vice* to be filed)
mjc@brewerattorneys.com
Stephanie L. Gase
(*pro hac vice* to be filed)
szg@brewerattorneys.com
BREWER, ATTORNEYS &
COUNSELORS
1717 Main Street, Suite 5900
Dallas, Texas  75201
Telephone:  (214) 653-4000
Facsimile:  (214) 653-1015

**COUNSEL FOR 3M COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

 I hereby certify that on July 29, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF filing system, which will send notification of such filing to all counsel of record.

       <u>s/ William S. Cox, III</u>

       Of Counsel

4850-8725-5860.16
2124-15